## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ARIANA CORTES,

                    Plaintiff,

        v.

NATIONAL LABOR RELATIONS
BOARD,

                    Defendant.

Civil Action No. _____

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

## INTRODUCTION

1.  The Supreme Court made clear in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) and *Collins v. Yellen*, 141 S. Ct. 1761 (2021) that under Article II of the Constitution, the President must be able to remove federal officials who exercise substantial executive power. S*ee also Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010).

2.  The structure of the National Labor Relations Board ("NLRB" or "Board") does not comply with this constitutional mandate.

3.  Article II, Section 1 of the Constitution vests in the President all executive power, which includes the power to appoint, supervise, and remove federal officers who exercise executive power.

4.  The five-member NLRB exercises substantial executive power because it issues binding rules, adjudicates unfair labor practices and representation disputes, issues subpoenas, and decides whether and how to direct and conduct elections in representation cases.

5.   The National Labor Relations Act ("NLRA" or "Act") limits the President's ability to remove Board members to "neglect of duty or malfeasance in office" and prohibits removal for any other reason. 29 U.S.C. § 153. These restrictions are impermissible limitations on the President's ability to remove Board members and violate the Constitution's separation of powers. Thus, the Board, as currently constituted, is unconstitutional.

6.   Plaintiff Ariana Cortes filed a Request for Review to the Board, asking it to overturn a Regional Director's Decision and Order that dismissed her decertification election petition. She is entitled to have a constitutionally structured Board, properly accountable to the President, rule on her Request for Review. Cortes asks this Court to declare that the Board's structure violates Article II of the Constitution and enjoin the Board from acting on her case until the constitutional infirmities in the Board's structure have been resolved.

## JURISDICTION AND VENUE

7.   This Court has jurisdiction over this case under Article III of the United States Constitution and 28 U.S.C. § 1331 because Cortes' claims arise under the Constitution. *See Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890, 903–06 (2023) (holding alternative review scheme does not divest a district court of jurisdiction over a constitutional challenge to an agency's structure); *Free Enter. Fund*, 561 U.S. at 491 n.2; *Seila Law*, 140 S. Ct. at 2196.

8.   Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because the Board is headquartered in this district and a substantial part of the events or

omissions giving rise to the claim occurred in this district.

## PARTIES

9. Plaintiff Ariana Cortes ("Cortes") is a barista employed by Starbucks Corporation in Buffalo, New York, and is the decertification petitioner in *Starbucks Corporation,* NLRB Case Number 03-RD-316974.

10. Defendant National Labor Relations Board ("NLRB" or "Board") is an agency of the United States.

## FACTS

11. Cortes is an employee at Starbucks Store #7488 in Buffalo, New York. The store is commonly known as the "Del-Chip Store" given its location on the corner of Delaware Avenue and West Chippewa Street. Cortes has worked at this location since November 2021.

12. On April 15, 2022, NLRB Region 3 certified a labor organization known as Workers United as the exclusive representative of the full-time and part-time Baristas, Shift Supervisors, and Assistant Store Managers at the Del-Chip store.

13. Over the next year, Cortes became disillusioned with Workers United and its supporters. She believes Workers United's presence turned the store's culture divisive because its supporters often disparaged employees who did not fully support the Union.

14. Union agents rarely spoke to employees about substantive issues and never inquired about the employees' interests in bargaining or contract terms. For the several months prior to Cortes filing the decertification petition on behalf of herself

and her fellow employees, the Union provided no official communication about bargaining from Workers United to the employees at the Del-Chip store.

15. Most of the Union's original supporters are no longer employed at the Del-Chip location. As of today, Cortes believes the vast majority of the employees at the Del-Chip location were not part of the unit when Workers United was certified in April 2022.

16. Under current law, a union's majority status cannot be challenged by employees for a year after NLRB certification. Shortly after Workers United's certification year expired, Cortes circulated a petition to decertify the union. A majority of employees in the bargaining unit signed the petition in support of decertification.

17. On April 28, 2023, Cortes filed a decertification petition with NLRB Region 3, docketed as *Starbucks Corporation,* Case No. 03-RD-316974, asking it to conduct an election to determine if a majority of employees at the Del-Chip stores wished to be represented by Workers United.

18. On May 3, 2023, the Regional Director issued an Order to Show Cause (Ex. A) requesting that the parties provide their arguments as to whether the decertification petition should be dismissed, subject to reinstatement, based on unfair labor practice complaints issued by the NLRB General Counsel against Starbucks in other cases from around the nation: Case Nos. 19-CA-294579, 03-CA-295810, and 01-CA-305952.

19. In Case No. 19-CA-294579 (Ex. B) the General Counsel alleged that

between April 2022 and September 2022, Starbucks promised and implemented wage increases and benefit changes to employees in nonunion stores while withholding those benefits from unionized stores. The General Counsel is seeking extraordinary remedies, including: an order compelling Starbucks to cease granting wage increases and other benefits to nonunion Starbucks employees that could dissuade nonunion employees from supporting a union; an order requiring Howard Schultz, Starbucks' former CEO, to record and disseminate his reading of a Board-created Notice to Employees; and an order granting Workers United access to employee bulletin boards and electronic means of communication for up to one year. Additionally, the General Counsel is seeking significant monetary penalties, including an order for Starbucks to make whole all affected employees for any losses suffered from Starbucks' failure to grant increased wages and benefits based on their store's union representation status after May 3, 2022, plus interest; and to make any affected employee whole for any other direct or foreseeable pecuniary harms suffered as a result of Starbucks' grant of benefits to only nonunion employees.

20. In Case No. 03-CA-295810 (Ex. C), the General Counsel alleged Starbucks violated Section 8(a)(3) and (1) of the Act by disciplining or discharging Del-Chip store employees for their union activities. In this consolidated complaint, the General Counsel seeks "make whole" remedies including back pay for the named employees, consequential damages suffered as a result of Starbucks' alleged conduct, offers of reinstatement for the discharged employees and/or a new "qualified applicant of the Union's choice."

21. In Case No. 01-CA-305952 (Ex. D), the General Counsel alleges Starbucks violated the Act by failing and refusing to provide Workers United with dates for bargaining sessions and has refused to bargain for a first contract. In this consolidated complaint, the General Counsel seeks extraordinary remedies, including: an order requiring Howard Schultz, Starbucks former CEO, to record and disseminate his reading of a Board-created Notice to Employees; an order granting Workers United access to employee bulletin boards; and an order requiring Starbucks to bargain in good faith with the union for up to one year, which would prevent any decertification petition from being processed during that year. Additionally, the General Counsel is seeking an order to compel Starbucks to bargain with Workers United for a minimum of 15 hours a week until an agreement is reached or the parties reach an impasse. Finally, the General Counsel is seeking significant monetary penalties, including an order for Starbucks to make whole employee negotiators for any earnings lost while attending bargaining sessions, and to reimburse Workers United for costs and expenses incurred in collective bargaining after January 31, 2022.

22. In response to the Regional Director's Order to Show Cause (Ex. A), Cortes filed a memorandum stating that her desire to decertify the Union had no connection with Starbucks' alleged unfair labor practices described above. Instead, her and her co-workers' desire to rid themselves of an unwanted union came solely from their direct experience of dealing with it for the past year.

23. On May 25, 2023, Region 3's Regional Director issued a Decision and Order

dismissing Cortes' petition. (Ex. E). The Order states the petition is subject to reinstatement after disposition of the pending unfair labor practice cases. (Ex. E, at 2). After the unfair labor practice litigation has concluded and any remedies ordered have been completed, Cortes may seek reinstatement of her petition from the Regional Director. If that reinstatement request is denied, Cortes may file another Request for Review to the Board.

24. On June 9, 2023, Cortes filed a Request for Review with the Board of the Regional Director's decision to dismiss her petition.

25. Because the NLRB has not granted Cortes' request for an election, Cortes continues to be forced to accept the representation of an agent she and the majority of her coworkers do not want.

26. If Cortes' current Request for Review is denied by the politically unaccountable Board, Cortes will seek reinstatement of the petition.

**LEGAL BACKGROUND**

## I.  The Removal Power

27. Article II gives the President "the general administrative control of those executing the laws," which includes the "power of removing those for whom he cannot continue to be responsible." *Myers v. United States*, 272 U.S. 52, 117, 164 (1926).

28. The Supreme Court recognizes this removal power is impermissibly restrained by statutes that limit the President's ability to remove an executive official, either by restricting who can remove, or limiting the rationale for removal. *See Free Enterprise Fund*, 561 U.S. at 495; *Seila Law*, 140 S. Ct. at 2192; *Collins*, 141

S. Ct. at 1783–84.

29. For example, in *Free Enterprise Fund*, the Court invalidated a for-cause removal restriction on the members of the Public Company Accounting Oversight Board. 561 U.S. at 495–96. The officers in question could be removed only for cause by officers of the Securities and Exchange Commission, who in turn could be removed only for cause by the President. The Court held that this removal restriction "subvert[ed] the President's ability to ensure that the laws are faithfully executed" and was thus "incompatible with the Constitution's separation of powers." *Id.* at 498.

30. The Supreme Court found a narrow exception to this general and plenary removal power in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). In that case, the Court upheld a statute that prohibited the removal of FTC Commissioners except for "inefficiency, neglect of duty, or malfeasance in office," *id.* at 619–20 (quoting 15 U.S.C. § 41) on the basis that, at that time, FTC Commissioners exercised only quasi-legislative and quasi-judicial authority, and did not exercise any "executive power in the constitutional sense." *Id.* at 628.

31. In *Seila Law*, the Court reaffirmed the fundamental separation of powers principle that the President must be free to remove executive officers at will, with only "two exceptions—one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 140 S. Ct. at 2199–2200.

## II.    The National Labor Relations Board

32. The NLRB is a federal regulatory agency whose authority has been

delegated by Congress through the NLRA.

33. The NLRB consists of a maximum of five Board members ("Board Members") who are appointed to staggered, five-year terms by the President, with the advice and consent of the Senate. 29 U.S.C. § 153. Pursuant to NLRA Section 3, Board Members may only be removed by the President "upon notice and hearing" for "neglect of duty or malfeasance in office, but no other cause." 29 U.S.C. § 153.

34. The Board exercises substantial executive authority.

35. The Board has the executive power to appoint the "executive secretary, and such attorneys, examiners, and regional directors, and other such employees as it may . . . find necessary for the proper performance of its duties." 29 U.S.C. § 154; *see also* U.S. Const. art. II. § 2, cl. 2 ("Congress may by Law vest the Appointment of such inferior Officers, as they think proper, . . . in the Heads of Departments."). Through this authority, the Board appoints Regional Directors, who oversee the NLRB's twenty-six regional offices.

36. The Board has the executive power to "prevent any person from engaging in any unfair labor practice . . . affecting commerce," which entails authority to conduct administrative adjudications and extract consequential remedies from employers and unions. 29 U.S.C. § 160.

37. The Board has the executive power to issue subpoenas. 29 U.S.C. § 156; 29 CFR § 102.31.

38. The Board has the executive power to engage in rulemaking. 29 U.S.C. § 156.

39. The Board has the executive power to conduct union representation elections and adjudicate representation election disputes. 29 U.S.C. § 159.

## A. The Board's Representation Election Process

40. Under the NLRA, a labor organization can only be recognized as employees' exclusive bargaining representative when it represents a "majority of the employees in a unit appropriate for such purposes." 29 U.S.C. § 159(a)(1). Once a union has been "designated or selected," it has the exclusive power to negotiate the covered employees' "rates of pay, wages, hours of employment, or other conditions of employment." *Id.*

41. An employee, group of employees, an employer, or a labor organization may file a representation petition seeking a secret ballot election to determine whether a union has the support of a majority of employees in a bargaining unit. 29 U.S.C.§ 159(c)(1)(A). A petition to certify a union is called a "certification" petition. A petition to remove a union is called a "decertification" petition. If a union wins an election, the NLRB certifies it as the exclusive representative of a bargaining unit of employees.

42. This certification carries significant legal effects. It imposes a legal obligation on the employer to bargain with the union. An employer that refuses to bargain with a Board-certified union violates Section 8(a)(5) of the NLRA. 29 U.S.C. § 158(a)(5).

43. The certification of an exclusive representative also carries legal consequences for employees subject to that representation. The certification of a union grants to the union "the exclusive right to speak for all the employees in

collective bargaining." *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2467 (2018). Certification extinguishes an individual employee's ability to negotiate his own conditions of employment directly with his employer by "thrust[ing]" those who oppose the union "unwillingly into an agency relationship . . . akin to that between a trustee and a beneficiary." *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286–87 (11th Cir. 2010). This relationship directly affects employees' First Amendment associational interests because the government is dictating the individual employees' agent for purposes of bargaining with a private employer. *Id.*

44. After the NLRB certifies a union, employees are prevented from decertifying or removing that union for at least one year after its certification. *See Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 37 (1987); *Brooks v. NLRB*, 348 U.S. 96, 104 (1954).

45. Employees, unions, or employers that file representation petitions may do so in one of the Board's various regional offices. The Board is "authorized to delegate to its regional directors its powers under Section 9 to determine the unit appropriate for the purpose of collective bargaining, to investigate, and provide for hearings, and determine whether a question of representation exists, and to direct an election or take a secret ballot . . . and certify the results thereof." 29 U.S.C. § 153(b).

46. The Board is required to investigate any petition alleging a "substantial number" of employees desire an election. *Id.* The Board has adopted the administrative rule that 30 percent constitutes a substantial number. These rules apply equally to certification and decertification petitioners. 29 U.S.C. §

159(c)(1)(A)(ii).

47. Once a petition has been filed "the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice." 29 U.S.C. § 159(c)(1)(B).

48. As part of this investigation, the Board requires the parties to file Statement of Position forms. 29 C.F.R. § 102.63(b). The Statement of Position for the employer must include a list of full names, work locations, shifts, and job classifications of all individuals in the proposed unit. 29 C.F.R. § 102.63(b)(3)(i)(D). Similarly, an employer and union must state their position as to the Board's jurisdiction over the employer, if the proposed bargaining unit in the petition is appropriate, whether there are other locations or employees that should be included or excluded, whether they will contest any individual's eligibility to vote and the basis of that contention, and whether there is a legal bar to conducting the election. 29 C.F.R. § 102.63(b)(3)(i)(B).

49. Failure to supply information required by the Statement of Position form may cause the NLRB to issue a "subpoena and seek enforcement of the subpoena in federal court." Similarly, a party is precluded from litigating any issue that the party failed to raise in its timely Statement of Position. 29 C.F.R. § 102.66(d).

50. After a petition is filed, the parties to the petition (typically the union, employer, and the petitioner) may enter a stipulated election agreement with the Region setting the time, place, and manner of an NLRB conducted secret ballot

election.

51. If the parties do not reach an agreement, the Regional Director will conduct a hearing on the petition. This hearing is "conducted by an officer or employee of the Regional office." 29 U.S.C. § 159(c)(1)(B). The hearing is a formal proceeding designed to elicit information on the basis of which the Regional Director can decide whether a question of representation exists. 29 C.F.R. § 102.64(a). In practice, the Board treats these hearings as investigatory, not adversarial. NLRB Case Handling Manual § 11181.

52. The hearing officer uses the hearing to develop a record regarding the issues that the Regional Director has determined need to be litigated. The parties and the hearing officer have the power to call, examine, and cross examine witnesses, and to introduce documentary and other evidence into the record. 29 C.F.R. § 102.66(a). The Board can issue subpoenas to individual parties to require testimony or document production. 29 C.F.R. § 102.66(f).

53. After the pre-election hearing, if the Regional Director finds a question of representation exists, he will "direct an election by secret ballot and shall certify the results thereof." *Id.* If the Regional Director does not find a question of representation exists, he dismisses the petition. 29 C.F.R. § 102.71(a). When a petition is dismissed, parties can file a Request for Review with the Board. 29 C.F.R. § 102.71(c).

54. If the Region directs an election, it will conduct an election. After the election is completed, the Region will then hold a public tally of the ballots and announce a winner of the election. 29 C.F.R. § 102.69(a).

55. After the vote is concluded and the ballots counted, the parties are afforded an opportunity to object to the election's results and proffer evidence in support of their objections. To resolve objections, a Regional Director will investigate the objections by examining the evidence proffered. 29 C.F.R. § 102.69(c). If the evidence described in the objections could be grounds for setting aside an election, a Regional Director will hold a hearing. 29 C.F.R. § 102.69(c)(1)(ii).

56. A representation election objections hearing is conducted under the same rules as a pre-election hearing, allowing any party the right to call, examine, and cross examine witnesses, and introduce evidence into the record. 29 C.F.R. § 102.69(c)(1)(iii).

57. After the hearing, the Regional Director will issue an order disposing of the objections to the election. At this time, a party may file a Request for Review to the Board.

58. A decision of the Regional Director is final unless a Request for Review to the Board is granted. 29 C.F.R. § 102.69(c)(2).

59. Conducting representation elections is exercising substantial executive authority because it constitutes "implement[ing] the legislative mandate," which "is the very essence of 'execution' of the law." *Collins*, 141 S. Ct. at 1785. Adjudicating election disputes is also an exercise of substantial executive authority because administrative adjudications "are exercises of—indeed, under our constitutional structure they *must be* exercises of—the executive Power." *Seila Law*, 140 S. Ct. at 2198 n.2 (cleaned up); *see City of Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013).

**B. The Board's Blocking Charge Policy**

60. A Regional Director has the power to dismiss, or hold in abeyance, employee petitions based on unfair labor practice allegations against employers or unions. This policy has been known as the "blocking charge policy."

61. This policy allows a party to halt an election indefinitely by filing unfair labor practice charges against employers. Blocking charges can delay a petitioned for election for months, or even years, if the election is allowed at all.

62. Courts of appeals have criticized the blocking charge policy's adverse impact on employee free choice and noted its potential for abuse and manipulation by incumbent unions seeking to avoid a challenge to their representative status. *NLRB v. Hart Beverage Co.*, 445 F.2d 415, 420 (8th Cir. 1971); *Templeton v. Dixie Color Printing Co.*, 444 F.2d 1064, 1069 (5th Cir. 1971); *NLRB v. Midtown Serv. Co.*, 425 F.2d 665, 672 (2d Cir. 1970); *NLRB v. Minute Maid Corp.*, 283 F.2d 705, 710 (5th Cir. 1960); *Pacemaker Corp. v. NLRB*, 260 F.2d 880, 882 (7th Cir. 1958).

63. In 2014, the Board engaged in rulemaking to update and codify its blocking charge policy through the rulemaking process. Representation—Case Procedures, 79 Fed. Reg. 74308 (Dec. 15, 2014).

64. Based on widespread criticism of the blocking charge policy, in 2020, the Board seemingly eliminated this policy in its "Election Protection Rule." 85 Fed. Reg. 18366 (April 10, 2020). Under this rule, the Board is now required to direct an election and tally the ballots notwithstanding the pendency of unfair labor practice charges. *Id. See also* 29 C.F.R. § 103.20(b).

65. In comments adopting the final Election Protection Rule, the Board found "the final-rule amendment provides that a blocking-charge request will no longer delay the conduct of an election in any case." 85 Fed. Reg. at 18,375.

66. Despite the Election Protection Rule disposing of the blocking charge policy, the Board effectively revived that policy through administrative adjudication. In *Rieth-Riley Construction Co*, 371 NLRB No. 109 (June 15, 2022), the Board held Regional Directors still possess the power to dismiss election petitions if they have found merit to unfair labor practice allegations that "if proven would interfere with employee free choice in an election and is inherently inconsistent with the petition itself. *Id.* slip op. at *3 (cleaned up).

67. Under *Rieth-Riley*, if a Regional Director finds merit to an alleged unfair labor practice charge, he can effectively block an election by dismissing the petition—the opposite of what the Election Protection Rule requires.

68. Here, the Region dismissed Cortes' decertification petition pursuant to the Board's revived blocking charge policy.

## C. The Board's Unfair Labor Practice Process

69. Section 7 of the NLRA grants employees the "right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing . . . and to engage in other concerted activities for the purpose of . . . mutual aid or protection, and shall also have the right to refrain from any or all such activities." 29 U.S.C. § 157.

70. To protect these rights, Congress declared it an "unfair labor practice" for

an employer to "interfere with, restrain, or coerce" employees' Section 7 rights. 29 U.S.C. § 158(a)(1). Similarly, Congress declared it an "unfair labor practice" for a labor organization to "restrain or coerce" employees' Section 7 rights. 29 U.S.C. § 158(b)(1)(A).

71. Section 8 of the NLRA prohibits a number of employer unfair labor practices, including, but not limited to: dominating or interfering with the formation of a labor union or contributing financial support to a labor union, 29 U.S.C. § 158(a)(2); discriminating in "hire or tenure of employment" either "to encourage or discourage membership in any labor organization," 29 U.S.C. § 158(a)(3); discharging or discriminating against an employee because he has filed charges or given testimony to the NLRB, 29 U.S.C. § 158(a)(4); and refusing to bargain with a union, 29 U.S.C. § 158(a)(5).

72. Section 8 also prohibits union unfair labor practices, including, but not limited to: causing or attempting to cause an employee to be discriminated against for reasons other than the failure to pay dues required as a condition of employment, 29 U.S.C. § 158(b)(2); to refuse to bargain with an employer, 29 U.S.C. § 158(b)(3); to engage in a secondary boycott, 29 U.S.C. § 158(b)(4); and to engage in recognitional picketing, 29 U.S.C. § 158(b)(7).

73. Congress has empowered the Board to "prevent any person from engaging in any unfair labor practice." 29 U.S.C. § 160(a).

74. The Board does not have independent authority to initiate an unfair labor practice charge. Instead, a charge must be filed by any member of the public, although

charges are generally filed by an aggrieved employee, employer, or labor organization. 29 U.S.C. § 160(b). The charge must be investigated and prosecuted by the Board's General Counsel, through the Board-appointed Regional Directors.

75. The General Counsel is appointed by the President and with the advice and consent of the Senate, for a term of four years. 29 U.S.C. § 153(d). The General Counsel has "final authority, on behalf of the Board" regarding the investigation of charges and the issuance of complaints. *Id.*

76. Once a charge is filed, it is investigated by the General Counsel, through the Board-appointed Regional Directors. If the General Counsel finds merit to the charge, she will issue a complaint or try to arrange a settlement. The General Counsel will dismiss meritless charges.

77. A complaint issued by the General Counsel states the alleged facts and violations of law and sets a date of hearing.

78. The complaint is assigned to an administrative law judge to hold hearings, take witness testimony and make findings as to whether an unfair labor practice occurred. 29 U.S.C. § 160(c). At the behest of parties, the Board will issue subpoenas for such hearings. The administrative law judge will then issue a recommended order for the Board. *Id.* If the ALJ finds that an unfair labor practice has occurred he will issue "findings of fact" and a recommended "order requiring such person to cease and desist from such unfair labor practice." 29 U.S.C. § 160(c).

79. If the parties do not contest the ALJ's order, it becomes a final order of the Board. If the parties contest the order, they do so by filing exceptions to the order

with the Board.

80. The Board's final order can contain more than a cease and desist order. It can require parties to take affirmative action to rectify unfair labor practices, "including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c).

81. The Supreme Court has held that the Board's authority to issue a remedy is "a broad discretionary one." *NLRB v. J.H. Rutter-Rex Manufacturing*, 396 U.S. 258, 262–63 (1969) (citation omitted). As part of its discretion to issue "make whole" remedies, the Board has ruled that it may order compensation not only for back pay, but for "any other direct or foreseeable pecuniary harms suffered." *Thryv, Inc.*, 372 NLRB No. 22, slip op. at *14 (Dec. 13, 2022). These remedies include payments for "medical bills" "interest and late fees on credit cards," "increased transportation or childcare costs," *id.* slip op. at *8–9; and expenses for a failure to bargain, including lost wages to employees who attended bargaining sessions, *Noah's Ark Processors*, 372 NLRB No. 80, slip op. at *3 (Apr. 20, 2023). The Board may also order a respondent to post or mail a notice or explanation of rights. An agent of the respondent may also be required to either read the notice or explanation at a meeting of employees, or have it read by a Board agent in their presence. *Conair Corp. v. NLRB*, 721, F.2d 1355, 1386–87 (D.C. Cir. 1983).

82. The Board also has the power, any time after the issuance of a complaint, to seek temporary federal court injunctions to restrain alleged unfair labor practice activity. 29 U.S.C. § 160(j).

## STANDING

83. The "structural principles secured by the separation of powers protect the individual," *Bond v. United States*, 564 U.S. 211, 222 (2011), and are "critical to preserving liberty," *Free Enter. Fund*, 561 U.S. at 501; *see Collins*, 141 S. Ct. at 1780. Accordingly, the Supreme Court "ha[s] long permitted private parties aggrieved by an official's exercise of executive power to challenge the official's authority to wield that power while insulated from removal by the President." *Seila Law*, 140 S. Ct. at 2196; *see Collins v. Yellen*, 141 S. Ct. 1761, 1780 (2021) (holding that "whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge.").

84. Structural separation-of-powers violations inflict here-and-now injuries. *See Seila Law*, 140 S. Ct. at 2196 (holding that parties alleging injury resulting from actions of an unconstitutionally structured agency have standing to challenge removal restrictions because "when such a provision violates the separation of powers it inflicts a 'here-and-now' injury . . . that can be remedied by a court") (quoting *Bowsher v. Synar*, 478 U.S. 714, 727 n.5 (1986)).

85. Separation of powers injuries can be remedied by a court through "declaratory relief sufficient to ensure that the . . . requirements and . . . standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513; *see also Seila Law*, 140 S. Ct. at 2196; *Collins*, 141 S. Ct. at 1779; *see also Collins v. Mnuchin*, 938 F.3d 553 (5th Cir. 2019) (en banc) (approving of "prospective relief" in the form of a "declaration" that a

removal restriction is unconstitutional).

86. The Board's unconstitutional structure has inflicted and continues to inflict a here-and-now injury on Cortes. Cortes has a right under Section 9 of the NLRA to seek a decertification election. Cortes also has a corresponding right to have her Request for Review and, if the dismissal is upheld, any request for reinstatement of her petition, to be considered by a constitutionally structured agency. The Court can remedy this injury with declaratory and injunctive relief.

87. Cortes' injuries are traceable to the Board because she was required to file her petition and Request for Review with the Board, and submit to the Board's rules for processing the petition.

## CLAIM FOR RELIEF

88. Plaintiff realleges and incorporates by reference the paragraphs set forth above.

89. Article II of the Constitution provides that "[t]he executive Power shall be vested in [the] President," U.S. Const. art. II, § 1, cl. 1, and that he shall "take Care that the Laws be faithfully executed," *id.* art. II § 3. "In our constitutional system, the executive power belongs to the President and that power generally includes the ability to supervise and remove the agents who wield executive power in his stead." *Seila Law*, 140 S. Ct. at 2211.

90. This removal power cannot be restricted by Congress, except in two narrow instances: (1) multimember agencies that do not wield executive power; and (2) certain inferior officers. *Seila Law*, 140 S. Ct. at 2199–2200.

91. The Board and its Members do not fall under either of the two exceptions to the President's removal power.

92. Board Members are principal officers wielding substantial executive power. This includes the power to promulgate binding rules, to enforce the law through adjudicating unfair labor practice disputes and issuing remedies, to issue subpoenas, and to enforce the law through adjudicating representation proceedings.

93. *Humphrey's Executor* does not compel a different result, because the narrow exception for quasi-legislative agencies that do not wield substantial executive power does not apply to the NLRB, given the substantial executive authority it exercises. To the extent that it does, it should be overruled.

94. NLRA Section 3 violates the separation of powers because it limits the President's ability to remove Board Members to instances of "neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153.

95. By adjudicating Cortes' petition notwithstanding its unconstitutional structure, the Board is violating her right to have her petition adjudicated by politically accountable officials. Cortes has been, and continues to be, injured by having to appear before, and have her petition and Request for Review considered by, a politically unaccountable Board.

## DEMAND FOR JUDGMENT

Plaintiff requests that this Court:

A.     Issue an injunction preventing Board Members from acting on Cortes' Request for Review until the resolution of this matter, and/or Board

Members are properly removable by the President.

B.      Declare the removal restrictions in 29 U.S.C. § 153 violate Article II of

the Constitution.

C.      Issue an order striking the removal restrictions in 29 U.S.C. § 153.

D.      Issue an award of all costs and attorney's fees pursuant to any applicable

statute or authority, including under the Equal Access to Justice Act, 28

U.S.C. § 2412; and

E.      Any other relief this Court deems just and proper.

Respectfully submitted

/s/ Glenn M. Taubman
Glenn M. Taubman
DC Bar No. 384079
Aaron Solem (*pro hac vice* pending*)*
*Attorneys for Plaintiff*
c/o National Right to Work Legal Defense
   Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, VA  22160
(703) 321-8510 (phone)
(703) 321-9319 (fax)
gmt@nrtw.org
abs@nrtw.org