UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARIANA CORTES, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>NATIONAL LABOR RELATIONS<br>BOARD,<br><br>  Defendant. | Civil Action No. 23-2954 (JEB) |

MEMORANDUM OPINION

The New Deal era ushered in a veritable alphabet soup of agencies, including the National Labor Relations Board. Since its inception, the NLRB has administered federal labor law as an independent agency, meaning that it enjoys a degree of separation from the vicissitudes of the political process — and even from the President himself. To safeguard this independence, the legislature ensured that Board members could be removed only for "neglect of duty or malfeasance in office." Plaintiffs Ariana Cortes and Logan Karam, employees at New York Starbucks stores that recently underwent successful unionization efforts, think Congress went a step too far in granting these protections. They accordingly filed this action, contending that the Board members' removal protections violate Article II of the Constitution and the separation of powers by permitting the Agency to exercise executive authority without sufficient presidential oversight and control. The NLRB has now moved to dismiss, arguing that the challenged removal restrictions are constitutional and that, in any event, Plaintiffs are not entitled to relief

1

absent a showing of harm caused by the restrictions.  Concluding that Plaintiffs lack standing and agreeing with the Government on this latter point, the Court will grant the Motion without entertaining the former.

**I.      Background**

A.  Legal Background

The Court begins with a brief overview of the NLRB's structure and authority, though it does not dwell on the finer points — such as the division of duties between the Board and its General Counsel — because, as explained below, the Court ultimately will not pass judgment on the challenged removal protections.

In 1935, Congress created the Board to pursue its announced policy of "encouraging the practice and procedure of collective bargaining" to more effectively resolve "industrial disputes arising out of differences as to wages, hours, or other working conditions."  29 U.S.C. § 151. The Board is made up of five members who serve staggered terms that can last up to five years. Id. § 153(a).  All are "appointed by the President by and with the advice and consent of the Senate," and the President also designates which of the five is to serve as Chairman.  Id.  Unlike, say, the Federal Trade Commission — whose organic act mandates political balancing, see 15 U.S.C. § 41 ("Not more than three of the Commissioners shall be members of the same political party.") — the membership of the Board need not be balanced by political affiliation.  Despite this, "there has been a 'tradition' since the Eisenhower years that Presidents have filled no more than three of the NLRB's five seats with members of their own party."  Brian D. Feinstein & Daniel J. Hemel, *Partisan Balance with Bite*, 118 Colum. L. Rev. 9, 54 (2018).  Most importantly for purposes of this case, the President may remove a Board member only "for neglect of duty or malfeasance in office."  29 U.S.C. § 153(a).

The primary duty of the NLRB is to enforce the National Labor Relations Act, a task that it carries out (almost) exclusively by adjudicating labor disputes.  See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 138 (1975); 29 U.S.C. § 160(a).  These disputes include unfair-labor-practices cases brought under Section 8 of the Act and "representation" cases brought under Section 9.  See 29 U.S.C. §§ 158, 159.  Once it determines that an employer has engaged in conduct prohibited by the NLRA, the Board may also "seek enforcement of its order[s] in a federal court of appeals."  Glacier Northwest, Inc. v. Int'l Bhd. of Teamsters Local Union No. 174, 598 U.S. 771, 776 (2023) (citing 29 U.S.C. § 160(e)).  Similarly, any individual "aggrieved by a final order of the Board" may petition for review of the Board's action either in her regional court of appeals or in the D.C. Circuit.  See 29 U.S.C. § 160(f).

B.  Factual Background

With this legal backdrop in mind, the Court proceeds to the facts.  For this task, it draws those facts from Plaintiffs' Amended Complaint and presumes them to be true.  See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).

Cortes and Karam work for Starbucks stores in Buffalo, New York, and Depew, New York, respectively.  See ECF No. 10 (Am. Compl.), ¶¶ 10–11.  Both stores were the subject of unionization efforts, which eventually succeeded in early 2022 when the Board — or, more specifically, the NLRB Director for Region 3 (which presumably covers these stores) — certified Workers United as the "exclusive representative" of Starbucks workers at these locations.  Id., ¶¶ 14, 31.  Plaintiffs were less than thrilled about this development and hoped to show that the majority of their co-workers felt the same way.  Id., ¶¶ 15–17, 32.  Once the Board certified it, however, Workers United was protected from such a decertification campaign by a year-long "irrebuttable presumption" that "it enjoys the support of a majority of the represented

employees." Veritas Health Servs., Inc. v. NLRB, 895 F.3d 69, 79 (D.C. Cir. 2018) (citation omitted). So Cortes and Karam had to bide their time. See Am. Compl., ¶ 18.

Following that one-year armistice, Plaintiffs resumed their offensive by filing decertification petitions with the Board's Region 3 director and asking her to "conduct an election to determine if a majority of employees" at each store still wished to be represented by Workers United going forward. See Am. Compl., ¶¶ 19, 33. The director dismissed Cortes's petition, which was filed a few months before Karam's, and a divided panel of the NLRB denied her request for review. Id., ¶¶ 25–27. Karam's petition met the same fate a few months later, as did his request for review. Id., ¶¶ 35–36; ECF No. 17 (Def. Reply) at 3 n.1. The reasoning behind these dismissals is not as relevant to the Court's analysis as the fact that both Plaintiffs have vowed to seek reinstatement of their decertification petitions. Id., ¶¶ 29, 36.

Before engaging in that process, Cortes filed this action in October 2023 to challenge the constitutionality of the Agency's structure. See ECF No. 1 (Compl.). Specifically, she contends that the statutory provision that limits the President's ability to remove Board members is an "impermissible limitation[]" on his Article II prerogatives and therefore violates the separation of powers. Id., ¶ 5. As a result, Cortes believes that she is entitled to an injunction preventing Defendant from adjudicating her forthcoming reinstatement request and a judgment declaring the challenged removal restrictions unconstitutional. Id. at 22–23. Roughly four months after bringing suit, Cortes filed an Amended Complaint that added Karam as a plaintiff but left the allegations and prayer for relief intact; this is the operative pleading here. See Am. Compl. The Government now moves to dismiss, arguing that the removal restrictions at issue pass constitutional muster and that, even if they do not, Plaintiffs have failed to allege any harm caused by those restrictions. See ECF No. 13 (MTD).

## II.    Legal Standard

When a defendant files a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff generally "bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 172–73 (D.D.C. 2020)); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). While a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

## III.    Analysis

The Court begins with the question of whether Plaintiffs have Article III standing before turning to the merits.

A.  <u>Standing</u>

Article III of the Constitution limits the jurisdiction of the federal courts to resolving "Cases" or "Controversies."  U.S. Const. art. III, § 2, cl. 1.  A party's standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."  <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992).  To have standing, a party must, at a constitutional minimum, meet the following criteria.  First, the plaintiff "must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'"  <u>Id.</u> (internal quotation marks and citations omitted).  Second, "there must be a causal connection between the injury and the conduct complained of — the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  <u>Id.</u> (citations omitted).  Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  <u>Id.</u> at 561 (citation omitted).  A "deficiency on any one of the three prongs suffices to defeat standing."  <u>U.S. Ecology, Inc. v. U.S. Dep't of Interior</u>, 231 F.3d 20, 24 (D.C. Cir. 2000).

Plaintiffs contend that they have standing to challenge the removal restrictions here because they "are injured by having to appear before an unconstitutionally structured agency," and such "injury is traceable to the NLRB's structure" and "redressable by declaratory relief." Opp. at 10.  The NLRB does not contest Plaintiffs' standing, instead focusing its efforts solely on the merits.  But because the Court is obliged to assure itself of its own jurisdiction, <u>see</u> <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 340 (2006), it is standing with which the Court begins.  Unfortunately for Plaintiffs, things are not as simple as they think.

Unlike the typical separation-of-powers litigant, Cortes and Karam do not challenge any action that the NLRB has taken. See Opp. at 25 (acknowledging that "Plaintiffs do not seek to void any agency action"); cf. Illumina, Inc. v. Fed. Trade Comm'n, 88 F.4th 1036, 1047 (5th Cir. 2023) (challenging order to unwind merger by contending, inter alia, that agency was unconstitutionally structured). Nor are Plaintiffs subject to an enforcement action or an investigation brought by the NLRB. Cf. Free Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477, 487 (2010) (plaintiff brought separation-of-powers action in response to agency investigation). Nor, for that matter, are Cortes and Karam themselves removed NLRB members. Humphrey's Ex'r v. United States, 295 U.S. 602, 612 (1935) (removed officer's estate alleging removal was unlawful); Myers v. United States, 272 U.S. 52, 106 (1926) (similar).

What Plaintiffs do attempt to bring is a freestanding challenge to the constitutionality of the NLRB by resting their "injury" on the fact that they will seek — but have not yet sought — reinstatement of their decertification petitions, and that such petitions will be adjudicated by an unconstitutionally structured agency. Yet Plaintiffs point to no case in which such a tenuous basis for standing was accepted. They instead rely on two recent Supreme Court cases, Collins v. Yellen, 141 S. Ct. 1761 (2021), and Seila Law LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183 (2020), neither of which helps their cause here.

Start with Collins. There, shareholders challenged the Federal Housing Finance Agency's adoption and implementation of a conservatorship-agreement amendment by contending, among other things, that the FHFA itself was unconstitutionally structured. That, they said, rendered the amendment unlawful. See 141 S. Ct. at 1787. In concluding that those plaintiffs had standing to bring such a challenge, the Supreme Court reasoned that the challenged agency action — viz., the agency's amendment — had caused them a "pocketbook injury[,] . . . a

prototypical form of injury in fact." Id. at 1779.  It was irrelevant that the shareholders "could

not trace their injury to the . . . removal restriction" specifically, the Court continued, because

"the relevant inquiry" for standing purposes was "whether the plaintiffs' injury can be traced to

'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." Id.

(quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).  In this case, conversely, Plaintiffs have

identified no injury traceable to a challenged agency action.  Indeed, they do not challenge the

NLRB's denial of their requests for review in this lawsuit or any other action the Board has

taken.

        Similarly, Seila Law involved a suit against the CFPB brought by a law firm that had

received a civil investigative demand from the agency.  See 140 S. Ct. at 2194.  The firm

challenged that demand on the ground that the agency's leadership by a single Director

removable only for cause violated the separation of powers, meaning that the demand had been

issued by an unconstitutional agency.  Id.  There was no doubt in the Court's mind that the firm

had appellate standing because it was "compelled to comply with [the demand]," regardless of

whether it could show that the demand "would not have been taken if the responsible official had

been subject to the President's control." Id. at 2196.  Again, the circumstances of the present

case differ insofar as Plaintiffs identify no action on the part of the NLRB from which an injury

to them flows.

        To be sure, there are cases in which "'being subjected' to 'unconstitutional agency

authority' — a 'proceeding by an unaccountable [agency]'" — may suffice to establish standing

even absent a specific agency action that caused injury.  Axon Enter., Inc. v. Fed. Trade

Comm'n, 598 U.S. 175, 191 (2023) (quoting Seila Law, 140 S. Ct. at 2196)).  For instance, in

Axon Enterprise, plaintiffs brought separate suits against the SEC and FTC after those agencies

had initiated enforcement actions against them.  Id. at 182–83.  The Court apparently saw no standing issue, explaining that the plaintiffs were suffering "a here-and-now injury" by being forced into proceedings before agencies they believed to be unconstitutionally structured.  Id. at 191; see also Bowsher v. Synar, 478 U.S. 714, 720 (1986) (describing such a "here-and-now" injury); Sidak v. United States Int'l Trade Comm'n, 2023 WL 3275635, at *5 (D.D.C. May 5, 2023) (plaintiff has standing where agency instituted a "sanctions proceeding against him . . . based on a constitutionally infirm protective order").  But there is no "here-and-now" injury in this case because Plaintiffs are not presently involved in proceedings before the NLRB.  Even by their own account, then, they are not "'being subjected' to 'unconstitutional agency authority' — a 'proceeding by an unaccountable [agency].'"  Axon Enter., 598 U.S. at 191.  They simply anticipate that they will be parties to such proceedings whenever they get around to filing their reinstatement petitions.  Such "'some day' intentions" do not a case or controversy make.  Lujan, 504 U.S. at 564.  The Court thus concludes that neither Cortes nor Karam has standing to press this constitutional challenge to the Board's structure.

B. Merits

Even if they did, their claims would founder on the merits.  On this point, Plaintiffs maintain that the NLRB, whose members are shielded from at-will removal, "wields substantial executive power . . . without any accountability to the President."  See ECF No. 16 (Opp.) at 25.  It thus violates the cardinal separation-of-powers principle that "the 'executive Power' — all of it — is 'vested in [the] President'" alone.  Id. at 20 (quoting Seila Law, 140 S. Ct. at 2191).  Defendant, for its part, retorts that Cortes and Karam are asking this Court to "ignore binding Supreme Court precedent upholding removal protections" like this one.  See MTD at 18.

While these issues may whet a theorist's appetite, the Court need not take up knife and fork.  This is because it agrees with the NLRB that Plaintiffs have not even tried to meet the harm requirement set forth in the Supreme Court's recent decision in Collins, which held that where plaintiffs showed no harm stemming from similar removal protections, there was "no basis for concluding" that an agency "lacked the authority to carry out [its] functions" and thus no unlawful action to remedy.  See 141 S. Ct. at 1788; see also id. at 1789 (Thomas, J., concurring) ("The Government does not necessarily act unlawfully even if a removal restriction is unlawful in the abstract.").  As a result, neither Cortes nor Karam is entitled to any relief even assuming that they have standing and are right on the constitutional question.

      1.   *Preliminary*

Before explaining why Plaintiffs have not satisfied this standard, a point of clarification. They seem to think that the Collins harm requirement is just Article III standing going by a different name.  See Opp. at 10–11.  And since they believe they can show that they are harmed by "being forced to appear before executive officials who are not accountable to the President," they maintain that they can *ipso facto* meet the Collins harm requirement, too.  Id. at 13.

Putting aside that, as explained above, Plaintiffs cannot in fact show that they are being so harmed because they have no current business before the Board, their top-line intuition is certainly reasonable — so much so that at least one member of the Collins majority apparently shares it.  See 141 S. Ct. at 1790 (Thomas, J., concurring) (noting that "[m]odern standing doctrine reflects" harm requirement).  Indeed, as described in Collins, the harm requirement does seem to get at one of the questions modern standing doctrine asks — *viz.*, whether the stated injury is "fairly traceable to the challenged action."  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013).  What is more, it is ostensibly difficult to see how the Collins rules differs in

application from the prototypical traceability test.  In particular, it would be curious to have a plaintiff who cannot show that she was injured by the challenged removal protection (as Collins requires) but can nevertheless establish that her injury is traceable to that statutory provision (as the Supreme Court has at times required for standing).  Compare California v. Texas, 593 U.S. 659, 679 (2021) (no standing because harm was not "fairly traceable" to "'allegedly unlawful' provision of which the plaintiffs complain"), with Collins, 141 S. Ct. at 1789 (litigant must show that "unconstitutional removal provision inflicted harm"); but see id. at 1779 ("[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct . . . not to the provision of law that is challenged.").

In any event, Collins itself proves that Plaintiffs cannot be right, as the Court there discussed the harm requirement only after concluding that those plaintiffs had standing and that the removal protections challenged were unconstitutional.  See generally 141 S. Ct. 1761.  The better way to understand this requirement, as the Fifth Circuit has explained, is as one element that plaintiffs must show to make out their constitutional claim against the Board Members' removal protections.  See Collins v. U.S. Dep't of Treasury, 83 F.4th 970, 981 (5th Cir. 2023) ("After Collins, a party challenging agency action must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused (or would cause) them harm.").  The key inquiry under Collins' harm requirement, accordingly, is not whether Plaintiffs have standing — which they do not — but whether they have alleged sufficient facts to make out their constitutional claim.

2.   *Application*

As the Government explains, they have not done that either.  See MTD at 15–18. Plaintiffs do not allege, for instance, that the President has "asserted that he would remove" an

NLRB member if the removal restrictions "did not stand in the way." Collins, 141 S. Ct. at 1789.  Nor have they attempted to establish "a nexus between [a] desire to remove and the challenged actions" taken (or to be taken) by the Board.  Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau, 51 F.4th 616, 632 (5th Cir. 2022); Consumer Fin. Prot. Bureau v. Law Offices of Crystal Moroney, P.C., 63 F.4th 174, 180 (2d Cir. 2023) (Collins requires showing of "but-for causation linking an unconstitutional removal protection to the complained-of agency action"); Consumer Fin. Prot. Bureau v. CashCall, Inc., 35 F.4th 734, 742–43 (9th Cir. 2022) (same); Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr., 2024 WL 1165116, at *10–11 (3d Cir. 2024) (same); K & R Contractors, LLC v. Keene, 86 F.4th 135, 149 (4th Cir. 2023) (similar).  Simply put, nothing in the Amended Complaint suggests that "the removal protections . . . would play any role in" future Board decisions on Cortes's and Karam's decertification petitions.  See MTD at 18.

Plaintiffs do not even pretend that they have so alleged, opting to instead argue that Collins does not apply here.  See Opp. at 16.  None of their contentions convinces.  They first posit that Collins "applies only to claims seeking retrospective relief, such as a claim to void past agency action."  Id.  It is true that the Court only addressed retrospective relief there because the plaintiffs "no longer ha[d] a live claim for prospective relief."  141 S. Ct. at 1787.  As every court of appeals that has dealt with this claim has recognized, however, the Court's reasoning in Collins "applies with equal force regardless of the relief sought."  Moroney, 63 F.4th at 180–81; Cmty. Fin. Servs., 51 F.4th at 631 ("Collins did not rest on a distinction between prospective and retrospective relief."); Calcutt v. Federal Deposit Ins. Corp., 37 F.4th 293, 316 (6th Cir. 2022) ("The Collins inquiry focuses on whether a 'harm' occurred that would create an entitlement to a remedy, rather than the nature of the remedy."), rev'd on other grounds, 598 U.S. 623 (2023).

Plaintiffs retort that these cases should be cabined to their facts and to the kind of prospective relief sought — an injunction against <u>ongoing</u>, as opposed to <u>future</u>, agency proceedings.  <u>See</u> Opp. at 19.  But if the reasoning of <u>Collins</u> drew no distinction between retrospective and prospective remedies, as these cases explicitly say, it surely drew no distinction between different kinds of prospective relief.  The Court thus takes these courts at their word and, having no reason otherwise to abandon this consensus, agrees that <u>Collins</u> applies irrespective of the relief sought.

As a last resort, Cortes and Karam urge this Court to hold off on applying the harm requirement until after deciding the "merits" of their constitutional challenge.  <u>See</u> Opp. at 17.  As they rightly point out, the Court in <u>Collins</u> itself decided that the challenged removal restrictions were unconstitutional before remanding the case for the lower courts to apply the harm requirement and determine the appropriate remedy.  <u>Id.</u>  What is more, they continue, deciding the issue of harm first would contradict the Court's statement that plaintiffs are "not required to prove that the Government's course of conduct would have been different in a 'counterfactual world' in which the Government had acted with constitutional authority" before a court can adjudicate their claim.  <u>Id.</u> (quoting <u>Seila Law</u>, 140 S. Ct. at 2196).

Taking this latter point first, Plaintiffs' Opposition provides a ready answer: this quote is describing standing requirements, not the elements of Plaintiffs' constitutional cause of action.  <u>See</u> Opp. at 18 ("What we said about standing in <u>Seila Law</u>" — including the above statement — "should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction . . . [and] does not mean that actions taken by such an officer are void *ab initio* and must be undone.") (quoting <u>Collins</u>, 141 S. Ct. at 1788 n.24).

Plaintiffs' more general contention — that the constitutionality of the removal protection ought to be determined first because that is how Collins proceeded — fares no better, for nothing in Collins requires courts to order their analysis in such a way.  In fact, some courts of appeals have also chosen to adjudicate the existence of harm stemming from the challenged protections without passing on their constitutionality.  See, e.g., Calcutt, 37 F.4th at 314 ("We need not delve deeply into the Seila Law inquiry in this case . . . because Collins instructs that relief from agency proceedings is predicated on a showing of harm, a requirement that forecloses [the plaintiff] from receiving the relief he seeks."); K & R Contractors, 86 F.4th at 148 (declining to decide constitutionality of removal protections because "regardless of how we answer the constitutional question presented by the removal provisions, we would be required to deny the petition because [the plaintiff] has not asserted any harm resulted from the allegedly unconstitutional statutes").

And for good reason: "if it is not necessary to decide more, it is necessary not to decide more."  PDK Lab'ys Inc. v. Drug Enforcement Admin., 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment).  This is particularly true where a court can, by deciding a case on another ground, sidestep thorny constitutional issues.  See Camreta v. Greene, 563 U.S. 692, 705 (2011) ("[A] longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.") (cleaned up).  Since the Court could "dispose of the case" on the harm requirement even if Plaintiffs had standing, it will leave the constitutionality of the NLRB members' removal protections for other jurists to decipher.  Bond v. United States, 572 U.S. 844, 855 (2014) (citation omitted).

**IV.    Conclusion**

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss.  A separate Order so stating will issue this day.


/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date:  April 10, 2024